So our next case on calendar is Padilla v. United States, 24-2801. Each side will have 20 minutes. Oh, but let's wait, because I think maybe we aren't done yet. Just a second. Okay, I think we're in place now, so you may begin. Good afternoon, Your Honors, and may it please the Court. David Kim for the U.S. Government. This case, as Your Honors are well aware, really boils down to two issues. One is jurisdiction, and one that goes more to the merits, but I think what they have in common is that they both turn on statutory interpretation, and so ultimately this case will be resolved on how this Court reads these particular statutes. Well, the second issue is a constitutional issue, so I don't know why it turns to statutory interpretation. Well, so speaking of the merits, when we talk about the residuum, and we're here because of the residuum. I mean, we were before this Court a few years ago, but we're back here again because the Supreme Court found that the residuum could be relevant, and the government's position has always been that. Well, that's an exaggeration. You know how they operate. They take it, and they TBR, and they send it back off, and it could be relevant. It could not be relevant. Nonetheless, Your Honor, the government does find that the residuum is very much relevant and is controlling this case. Well, isn't it very different than the posture that we're in now? You know, as I recall, that was a situation where there was an individual who had been detained at, you know, 25 yards from the border, that they had to establish where they had been in the country within two weeks. Here, the possibility is, frankly, for a larger group of people who have to establish two years of stay in the United States, and they could be from any part of the country, not just 25 yards from the border, as the Court specifically said. And I think they use language that we are supposed to look at the individual and their circumstances as we found them. So I think the group of people here is much, much larger, isn't it? So thank you for bringing that up, Your Honor. I think that's worth clarifying. When Thurisdgian came out, at that point, actually, the policy was two years. It wasn't two weeks. And so I do understand that. It doesn't matter what the policy was. The case was about, first of all, it was about admission, not detention. Right? Second of all, it was about an individual who was essentially intercepted at the border, 25 feet from the border. And what else? It certainly didn't say in terms that anybody who was subject to expedited removal didn't address any detention issue. It didn't address any issue about someone who was further into the country for a longer period of time. And there was a long history of case law that says that when people are actually in the country, they are entitled to due process. Is that not so? So this is an argument that is laid out in the respective briefs. How do you read Thurisdgian? And plaintiffs have suggested that if you... Plaintiffs haven't overruled all the old case, all the case law that goes back forever that says that people who are in the country, physically in the country, I mean, not at Ellis Island and not on parole, but actually walking around in the United States for some period of time have due process rights? I mean, you could be in the country and still be considered at the threshold. And you might call it an entry fiction, but entry fiction is actually very salient, not just for this case, but for all of those longstanding precedents that Your Honor has just mentioned. And so, you know, take parole, for instance. These people were not on parole. They had not been intercepted. My point is that if anything, these people are considered to be more at the threshold than someone who might have been under parole for several years within the country. And so... Why is that? Oh, so this is a case that we've mentioned. So if you look at Zabidas, for example, the Supreme Court there talked about a case called Kaplan v. Todd, and this is in our brief. And in that case, despite nine years' presence in the United States, the individual there was found to still be at the threshold, but not to have actually gained a footing. Is this a parole person? Is that what you're saying? This person was not a parole person, but they also cited a parole case. And so our point is that, you know, when you're talking about people under parole, people who've been here for nine years, for example, right, if anything, you could argue that they have more of a claim to having been in the country and having established ties. But even in those cases, due process arrests have been found to be very limited because... I mean, if they didn't agree to be treated as if they were still at the... and had not entered, they wouldn't have been allowed in at all. For the parole people. For the parole people. I understand that, Your Honor. So, like, obviously there are distinctions, but the point that we're trying to make is that through all these cases, they do talk about people who are at the threshold. Right, so suppose, Mr. Congress passed a statute that said, okay, it's not two years anymore, it's five years. Those people are still at the threshold? Well, to the extent that none of these people, whether you're in parole or whether you're somewhat under expedited removal, they haven't been given initial admission into the country. And so I understand that, like, perhaps, you know, five-year presence might feel more compelling than perhaps a two-week presence. But the fact of the matter is, throughout all the Supreme Court's cases dealing with these people at threshold... Just, just, just, Dergisim, you know, the court said specifically, quote, while aliens who have established connections in this country have due process rights in deportation proceedings. So there, in this case, the Supreme Court is telling us that if you have someone who has been in this country for a significant period of time, they have established some connections, and they do have these additional due process rights. So, but you're, you seem to suggest that maybe they don't. Yeah, an important clarification has to be made in the country after having been given initial admission. But that important critical fact isn't there for people who are under expedited removal order. And so, I mean, again, it doesn't really matter if it's two weeks or two years or five years or nine years for that matter. To the extent that they haven't been admitted... I guess the Supreme Court didn't say those words that you just said. They didn't, they didn't specify that. But then Jennings did talk about that, and the Supreme Court's decision does cite Jennings. And so... So it's your ultimate position that anybody who does not have an official approved entry into this country has no due process rights? If they haven't been given initial admission into the country, then their due process rights are limited to what statute provides. In this case, it would be 1225 D1, which is why it's critical to look at. I mean, that's tantamount to not having any due process rights, essentially. So, and you think there's any case that says that? No, they do have due process rights, and statute does grant them certain procedural rights. Well, they have statutory procedural rights, but that doesn't mean they have anything else. And those amount to due process rights in the eyes of the Supreme Court. But with regard to the detention, they have no... I mean, we're talking about detention. And here, as you read the statute, and as the Supreme Court apparently read it in Jennings, they have no right to any process about whether they're going to stay in detention. Is that right? And this is not something that we're fastening on a whole plot. That's what the statute actually says. Okay, so there's no process. The process is zero process. There's no bond hearing. There's no... There's no process. Zero process. No, no, there's no specific procedure requiring bond hearings, but they do have... Or any other kind of hearing, or any... And you say parole is the substitute, but that has no process. So there's no process. I would ask Your Honor to consider the fact that this class in particular, right, this is a class that was found to have a positive credible fear determination, right? And so that in itself is process. Not only that, people who have a negative... But that's not the question. The question is detention. No, the question is what process do they have, right? To ask whether they're going to be detained. And Your Honor, but Your Honor, you were talking just now about them having no due process whatsoever. I'm pushing back and saying, no, they do have process. Just not this particular procedure of bond hearings within seven days. I'm sorry. What process do they have as to whether they are going to be detained? And so, again, the fact that they've had credible fear interviews, they've been given those determinations, even if they have a negative credible fear determination, they can actually appeal that, right? And immigration just would consider that. And failing that, they could take that to the Board of Immigration Appeals. I understand that, but I'm asking about the detention. With regard to detention, yes, no bond hearing is mandatory. No hearing. No bond hearing. No any hearing. No bond hearings in particular. Let me ask. Yes. I understand your argument is no bond hearing, but can we talk about habeas for a second? So is there, what if someone ends up in detention in your process and then realizes, wait a second, I'm a citizen? Is that handled in habeas? Or do they have no way to get out? Like what happens if you have the wrong person? It turns out they actually were a citizen. Something is wrong. They're not supposed to be in expedited removal at all. How do they get out of it? So I think for that, Your Honor, it's helpful to look at 1225. I don't know if you have the stats before you, but 1225. One second. And it's important that we actually turn to the stats because language is very much relevant. I have 1225. Are you pointing to that? Yes. It's the subsection dealing with habeas. Sorry. Yes. So it's 1225 C1. No, I'm sorry. I think maybe you're looking at 1252. I think you're looking at 1252. You are correct, Your Honor. Yes, 1252 E2. Judicial review, any determination made under Section 1225 B1, the ER statute, is available in habeas corpus proceedings, but shall be limited to determinations of whether the petitioner is an alien. And that would be in D.C.? That would, yes. So if someone is in detention, your view is there's not no process, there's a habeas process that happens in D.C.? Right, that would be governed by a certain provision, but it's not fair to say that habeas is completely off the board for these people. They do have these safety valves, as we would call them, to challenge, for instance, this question of like, well, I'm not an alien in the first place, like I'm actually a U.S. citizen. That sort of issue could actually be litigated before the court in D.C. So basically, your response to Judge Berzon was they have no bond hearing, but they have a hearing, maybe, in D.C.? They do have a hearing in the habeas posture with respect to certain sort of issues. And not only that, I mean, if they do find that their detention is arbitrarily prolonged, they do believe that cases like Jennings, Zabida, Nazai might actually have an effect in their individual circumstances, right? I mean, that's something that also could possibly be brought up in habeas. And so, you know, an argument can be made about like how robust these safety valves might be, right? But then our frontline argument is that the language in 1225B1 is controlling, but to the extent the court might be concerned about leaving this class of people in particular with no options whatsoever, the INA does provide those safety valves. That's all we're pointing out, nothing more than that. Judge Zavidas, which is how I say it, said, once a citizen enters the country, the legal circumstances changes, whether due process clause applies to all persons within the United States, including non-citizens, whether their presence here is lawful, unlawful, temporary, or permanent. And then there's Shaughnessy, and there's the Wong Wing case, and there's, you know, a long, long history of that understanding. And my understanding is that you're saying one of two things. That's no longer true after Thurisdium, although it didn't purport to overrule any of it. Or maybe you're saying all the mentions you have with the statute gives you? It would be more the latter, Your Honor. We're not saying that Thurisdium purports to contradict or roll back Zavidas or the other Supreme Court precedents. All we're saying is that it just says with regard to these due process rights in the expedite removal context, it really is limited by statute. It only goes so far as statute provides, and there is a controlling statute here. That is 1225B1, which is why we keep going back to what that statute actually said. And so if Congress repealed all whatever is there, that would be okay? If there were nothing in statute, I mean, at the very least, as the Supreme Court did doubt, there would be, you know, Hades provisions that could still apply. But yes, if Congress were to, you know, roll everything back, that would definitely curb their options significantly. But I guess, well, that's a weird... If there was no expedite removal, there would be none of these people. You only have these people because there's an expedite removal process? I am a little confused. If the process of expedite removal was gone, then they wouldn't have people in expedite removal. I mean, they could still be placed in full removal proceedings, but for these people, because they're inadmissible, they were never admitted, number one, either they don't have a valid entry document, or they were able to enter through fraud or misrepresentation. It's a special class of people. And so for that group of people, like, Congress decided that the proceedings should be expedited. It should be expeditious, right? And part of... But once they're transferred into the... This class of people are out of the... as an actual practical matter, outside of the expedite removal process because they're now in the full removal process, and the timing is whatever is usually the case. So this group of people is no longer in an expedited system. Is that right? Well, yes. No. So a matter of MS addresses this, and to the extent the court is, you know, unsatisfied with what the Attorney General matter of MS said, keep in mind that matter of MS came after Jennings, right? Correct. And there... We should get back to the jurisdictional question because I think that's very relevant to the jurisdictional question. Oh, yes. But if I could just point out one thing about Jennings, Your Honor. So Justice Alito, in that opinion, he said, applicable proceedings, right? To tend to continue through applicable proceedings. Now, Your Honors may be questioning, what does that even mean? Does applicable proceedings mean only up to the point of referral? But we read it to mean basically the proceedings that a person who is under an expedited removal order, who is processed for expedited removal, would sort of progress through until a final decision is rendered. That seems to be essentially what Jennings decided. But it's still the case that they're not being expedited anymore. Well, but it's still the case that their underlying status is people who are processed for expedited removal and are subject to an expedited removal order. I mean, they're here in the first place because of that ER order. So that ER order is very much relevant. And to say that they lose that underlying status as soon as they're referred to full removal proceedings would be flat out wrong. Well, but it's a practical matter if you're trying to say that this process has to be adjusted to the expedition. They're no longer being expedited. That is true, Your Honor. Once they're in full removal proceedings, it is just that, full. It's not quite expedited. But it's full removal proceedings so that they can continue to advance their claim of asylum, right? That asylum application that is addressed in the ER statute. So the ER statute does contemplate the fact that they could be referred and that they could further pursue their asylum claim. So can I ask this? Maybe I should have read it more carefully and understood it better. The two-year thing that just happened where the government just said people up to two years are in expedited removal. Is that only going... Can you explain how that works? Like, were there people who were not considered in expedited removal before who, as of today, now, because it's in the last two years, all of a sudden they are now considered in this group? Or is it only forward-looking in some way? I believe it would encompass those people who, as of the day of the notice, when the notice went into effect, had basically crossed illegally into the country two years prior to the day of that notice. But this is how that particular regulation works. And this was the state of play when Thuracidium came out. And so sometimes, yes, there will be some toggling between maybe a two-weeks or a two-year period. It could even be like a one-year period, right? That's really up to the expression... But could the government say it's everyone? All of a sudden we're just considering everyone who doesn't have legal status to be an expedited removal person. And so then all of a sudden they all get detained? I mean, what stops that? The government is still bound by 1225 B1A3. Now, it does stress that this is up to the executive sole and unreviewable discretion. But it does say, in terms of the designation of that other class of people, there is a parameter of two years. Wait, where is that? Where is that? This is 1225 B1A3. But there's also the geographical change as well.  It's somewhat fictional to say somebody 100 feet from the border, 100 miles from the border is at the threshold of entry. But now it's anywhere. So if somebody is in... And as I understand your answer, if somebody has been in Colorado for a year and a half, it applies to them. But that's still consistent with the statutory text. And so to sort of narrow it even further, if we look at 1225 B1A3-2, it says here, basically, this class of alien could be designated if the alien has been physically present in the United States continuously for the two-year period. And so it really could be anywhere in the country so long as that two-year... My example is correct. Somebody who came here a year and a half before the change and has lived in Colorado ever since can be put into expedited removal proceedings and detained as long... If they're decided to have an asylum, to have a credible fear, they can be detained for years. In that two-year period, if they did make it to somewhere in the interior of the country, yes, it could apply. But it can be drawing some sort of distinction between them being in Texas versus Iowa, for example. Like, for purposes of applying this particular supervision of the statute, they would be treated the same. And your case... Oh, sorry. No, go ahead. And after that, I'd like to get to jurisdiction. And your case that... Or the cases that you cite for that proposition is what? In other words, because Thurgesian was talking about someone that's 25 yards from the border. What case or what case law or is it just purely a statutory argument that you're making? It's a straightforward reading of the statute that is consistent with Thurgesian because Thurgesian didn't hang everything on that... The answer to my question is that it's a statutory argument. You don't have a case for that proposition. Is that what you're saying? No, it is backed by Thurgesian and we would stand by that. Okay, that's the authority. But this is the authority. And what exactly in the Thurgesian opinion do you think says that? Is there a sentence, paragraph, anywhere that says that with regard to detention, not admission, and that is a big difference because in terms of due process, traditional due process rights, the case law says that people outside the country don't have any admission rights, and then it says, well, maybe if they're right at the border they don't have admission rights, which is what the issue was in Thurgesian. But does that say you've got to keep them in prison for a couple of years? That's number one. And number two, what is there in Thurgesian that goes beyond these people who are right at the border? I would say this, Your Honor. It's not as if... What's the answer to the question? What is there in the statute that says, so I will address that. I'm addressing right now, Your Honor. Nothing in Thurgesian. There's no holding in Thurgesian that says, oh, by the way, this holding is very narrow, very specific to people within 25 yards and only with respect to rights that they might be alleging in terms of perhaps seeking further review of an adverse determination by an immigration judge. There's no sentence like that. Now, yes, there are sentences that talk about rights regarding admission, but on the other side of the ledger there are also sentences and phrases, key pronouncements that talk about the procedural rights of people at the threshold of the country, people who have never been given initial admission to the country. In ordinary English, if you ask somebody whether somebody who's been in Colorado for a year and a half is at the threshold of the country, what do you think people would say? They'd say, no, that person isn't at the threshold of the country. So if that's what the language is that you're relying on, the person in Thurisidium wasn't at the threshold, and my hypothetical person is not at the threshold. So how do you get from Thurisidium to my hypothetical person who was a member of this class? To this hypothetical person, I would just point out, and I'm assuming the person's not a lawyer, hasn't read all the relevant Supreme Court decisions, I would point out Zavidas, Kaplan v. Todd, I would point out Lungmayma v. Barber, I'd point out Thurisidium. I'd say, I understand, I understand why you think you might not be at the threshold, but according to binding Supreme Court precedent, you are. That's the end of the discussion. Tell me a case or a sentence that says that. Anywhere. I can give you Zavidas, Your Honor. I just read you from Zavidas. It says the opposite, as far as I can tell. Well, so the distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. That's a sentence from Zavidas. Now, these are people who have never effected a legal entry. No, they haven't effected an admission. My understanding is that there has always been a difference between an entry and an admission. They haven't been officially admitted, but have they crossed the border and come into the country? Of course they have. They have crossed the country and they are physically present in the country. So they have entered, although they haven't been admitted. But those cases have never turned on the fact that their physical entry or even the length of their physical presence in the United States. I do find the jurisdictional questions a lot harder, so I would like to hear what you have to say about that. Yes, Your Honor. So it's similar for the jurisdictional question. You really do have to look at the statute. And so if you turn to 1252A2A, now there are four supervisions, Romanets I, II, III, and IV. And in our opening brief, we focused on Romanets II and IV. And I think it's quite telling that appellees in this case completely sort of overlook that and place their focus on I and III. Now, we're not conceding that I and III basically buttresses their arguments, but we are saying that II and IV are especially strong. And if you look at II, it says here, acceptance provided in subsection E. Tell me again what statute. Oh, I'm sorry. So this is 1252A2A. Go ahead. And Romanets II. Acceptance provided in subsequent E, which talks about challenges to the validity of the system. A decision by the attorney general to invoke the provisions of section. So whenever a person under ER is being detained, they're being detained pursuant to 1225B1. And so that is an indication. Let's turn to Romanets IV really quickly. It says here, procedures and policies adopted by the attorney general to implement the provisions of section 1225B1 of the title, the ER statute. And so the terms can't get much broader than that. And I think there's a reason for that. Which is the one that you're relying on now, IV? II and IV specifically. And why is II relevant here to the detention question? Because that decision by the attorney general to, let's say, detain a person pursuant to an expedited removal order is being done by invoking the provisions of the ER statute. That's why we think that they do fall under this subprovision. Can I ask you, I understand your argument that matter of MS falls within this. They're challenging matter of MS. Matter of MS falls within this. And that means that the case should go to DC? Right, right, right. Or are you saying you can't even go to DC? No, Your Honor, I've thought about this. Because we do make the 1222E3 argument as well, right? But then I would say that our top line argument, our main argument is 1222A2A. Meaning, slow down, meaning no one can decide whether matter of MS is correct. That would be the first argument that we're advancing. Now, plaintiffs have argued that 1222E3 doesn't apply. And if that's the case, fine. But we wouldn't get into 1222A2A on top of that, right? We would still stand by 1222A2A and say that's the principle provision that applies here. You don't get review under any circumstances. But to the extent we lose on 1222A2A, and the court finds based on plaintiff's allegations that there isn't a challenge to the system, it would still have to go to DC in that case. But what about, okay, sorry. How, you just a moment, I think it's like a contradiction, I think, of what you just said. Because you were just saying that the detention of a person falls under 2A2. But you said a little bit ago that a person who's in detention who thinks there's a problem can bring it in DC. But now you're saying they can't even bring it in DC because they're not allowed to bring it at all? To the extent that plaintiffs are saying that 1222E3 could apply because their so-called detention claim somehow implicates the validity of the system, we would say even that particular framing, there is a provision in 1222 that would bar the district court in this instance hearing the case. This is, I mean, there are several different Supreme Court cases construing different ones of these jurisdictional provisions in the Immigration Act. And they have always been very precise about what the language is that we're talking about. I had not even, my issue was whether this came under 4, but the notion that this comes under sub 2 and that this is a decision to invoke the provisions of subsection. And he makes a decision to invoke the provisions of subsection overall by putting them into expedited removal. But the detention just flows from the statute. He's not making any decisions about that. So I don't see how the detention comes under sub 2. Now the hard question is does it come under sub 4? So yes to both, Your Honor. So with respect to 2, I mean, each detention is being done pursuant to the statutory authority. Pursuant, but it's not the decision to invoke it. And that's the way these statutes have all been read. It's not about the decision to invoke it. So if Your Honor is requiring some sort of like explicit invocation of the mandatory detention provision in 1225B1 in each and every case, I can see where you're going, but I don't know how practical that would be. And because mandatory detention provision is a broad provision, but also applies in each individual case. And the government obviously has to believe that that is the detention provision that is at play in each individual case. I don't think I understood your answer to my question before. Leave out what plaintiffs are arguing and just tell me what you think. This case, okay, well, I want to ask about this class action, but also individual cases. I want your answer to both. Let's start with the individual case because that's where I felt the contradiction happened. So you were saying that a detention of a person is under either little 2 or little 4, and therefore no judicial review at all. But then I thought you also said, no, no, they can bring a habeas case in DC. So which is it? So the habeas thing, I think, it really depends on the individual circumstances that are presented in any case, right? So all we're saying is that we're not reading 1252A-4, for instance, right, to essentially sweep all habeas relief off the table for anyone who might be under ER order. We've never done that. We're not making that argument at this time. But why not? It says notwithstanding any other provision of law, statutory or non-statutory, any other habeas corpus provision. Because within the same statute, habeas corpus proceedings are spelled out in certain instances. So the very same statute does provide for some measure, a limited measure of habeas relief. I guess all of them say, except it's provided an E, and E is where the habeas relief would be. Right, so to go back to... So I guess that's your answer as to the individual. Right. So it's really a litigation strategy that we're adopting, Your Honor. We are really stressing 1252A-2A. I mean, that is our mainline argument, right? But we're saying to the extent that for some reason, if the court finds that, you know, 1252A-2A isn't controlling, and find that somehow, and again, I'm not talking about plaintiffs here. I'm talking about Your Honors. If you find that for some reason that the validity of the system is being challenged   in some way, we're saying that would still be covered under the statute. That would have to go to DC. That's all we're saying. Well, talking about 2A, though, wasn't what the government was doing just following what the Supreme Court had said in Jennings? I mean, or I'm sorry, in, not Jennings, but matter of MS. Isn't that exactly what they were doing? It wasn't creating a new policy. It was just following the law. Yes, the law as clearly articulated in an Attorney General's decision, Your Honor, is how we would put it. It was a decision in an individual case. It was already decided by the Supreme Court. So how is this a policy and procedure adopted by the Attorney General to implement the provisions of 1225B-1? I mean, that's, to me, the hard question when, in fact, the Supreme Court had already read the statute and said this is what the statute says. So it's not a policy and procedure. It's not a policy and procedure at all. It's what the statute says and what the Supreme Court has already said the statute says. Well, I think it's because prior to the matter of MS, there was a matter of XK where the government had taken a different position. Right, and the Supreme Court said it was wrong. Right, and so when it comes to the interpretation of the statute, I think the Attorney General at that point recognized that there could be some ambiguity. And so he did issue an authoritative decision. What was the ambiguity? The Supreme Court had already decided and he said that the Supreme Court had already decided exactly what he said. Yes, so the AG's decision in the matter of MS was definitely buttressed by the fact that Jennings had come out just before. It was exactly the same. Was there anything different about it? If it hadn't existed, wouldn't the rule be exactly the same? The difference would be that Justice Alito and Jennings didn't actually talk about referrals specifically. The word that he used was applicable proceedings and the AG in this instance said no, that's a clarification that you have to provide and that's authoritative. I'd like to try and understand that. I don't understand what you're saying. And so right now at this case, this case we're talking about whether people who have been found to have a positive credible fear determination and are then referred because of that according to statute then should be mandatorily detained. If the government says yes, it's a point to say no. Now on that specific question, yes, Jennings didn't explicitly say that that's what it follows. What does that mean when it comes to referral? What Jennings said was that somebody who is in this category of people who have been in expedited removal but have been determined to have a credible fear are to be detained as long as the asylum proceedings are ongoing. What's the referral? I don't understand that. The referral is the referral of that asylum case. So it's a lack of the word in Jennings when it was exactly the same thing? Well, if your Honor finds that, applicable proceedings, the phrase used by Justice Alito is so clear on its face a matter of MS was unnecessary, I wouldn't necessarily argue with that. It certainly seems that way and if that's the case, then where's their policy? And we will certainly take that. We'll take that. All right. Then 4 doesn't apply. Sub 4 doesn't apply. Because there is no policy and procedure adopted by the Attorney General. So if you're reading the phrase applicable proceedings in Jennings in that way, then perhaps we wouldn't even have to rely on the jurisdiction provision after all. But then the fact that a matter of MS came up, the fact that we're here in this litigation does show that Jennings didn't exactly speak directly to the issue presented today. I'm sorry. I don't see why that's true. They're now bringing what Jennings left open, which is a constitutional issue. Jennings did not leave that open. Jennings actually provided more support for the position of the government today.  I thought it specifically said that we're not deciding the constitutional issue and then you should go back and do it. Well, it was talking about the statutory reading of 1225B1 and it was saying that essentially when it comes to the constitutional avoidance doctrine, the position adopted by Plankton in that case was completely implausible. So it didn't really have to go farther than that. It did say that? Yeah. All right. And then what does it say at the end? I don't have the whole opinion for me, Your Honor. Okay. It says... Let me see. I'm not in the right place. Just a sec. Go ahead and I'll come back to you. Can I ask?   So, this case... Well, here it is. Because the Court of Appeals thoroughly stated that periodic bond-telling hearings are required by the Immigration Prisoners' Initiative and had no occasion to consider or respond to constitutional arguments on their merits. Instead, we re-mandicated to the Court of Appeals to consider them the first instance. Your Honor, we're happy to concede that this could be a straightforward statutory interpretation question and that perhaps their decision doesn't need to come to play because 1235B1 is so clear on its face. But to the extent we're having this argument about whether due process is implicated, to that extent we are bringing in thoracidium. But we also do find that Jennings is also very much relevant and helpful to the government's position that for these people at the threshold, and not just at the threshold, for people in ER under expedited removal, that really all you get is what the stats provide and that bond hearings, whether at six months or seven days, simply does not exist. So that's why Jennings referred this to the Court of Appeals to consider the issue even though it's the same issue they already decided? Your view is that they've already decided it because whatever's in the statute is sufficient. So there was nothing more to decide. I think that Jennings Court was saying simply, look, when it comes to bond hearings at the six months period, to find that the stats require that is implausible. But we'll still give you a chance to take another crack at your interpretation of the statute and see what it might provide. It doesn't say the interpretation of the statute. It says to consider the constitutional issues on their merits. It doesn't say anything about a statute. It didn't also render like a clear stats for interpretation. It just said your reading of the statute is implausible. So you think that this is a challenge to a matter of MS. I think there's a question whether the plaintiffs are also challenging the statute directly. So I think this is maybe what Judge Berzan is getting at too. So whether the statute that matter of MS is applying and that Jennings was interpreting, whether that statute is constitutional or not. Do you understand this case before us right now to include that question, a challenge to the constitutionality of the statute, or are we only talking about matter of MS right now, which they're sort of the same thing, but everyone's been talking about matter of MS. So is there also a pure statutory constitutional challenge here? We do think it's by and large about matter of MS, but to the extent that plaintiffs might be suggesting that there's something problematic about the underlying statute itself, we would say in that case, Thurisidium has an even more compelling effect because Thurisidium is saying when it comes to statute and these longstanding due process principles, they're one and the same. They're coterminous. They're consistent with each other by their very nature, and that's what Thurisidium is saying. It's a very big, bold pronouncement by the Supreme Court, but it went ahead and actually issued it. I understand that's your merits argument. Do you think we have jurisdiction? I'm not sure we're going to agree with that merits argument, but that merits argument, do you think we should say what you just said, or do you think it has to go to D.C. for D.C. to say what you just said, or no one can even say what you just said because there's no jurisdiction to even say it? Well, that's his first argument. There's no jurisdiction. If that question is coming up, I would turn to 1222E3, again, the validity of the system challenge. It says here in 1222E3A2 that the District Court for the District of Columbia can consider these questions of whether the determinations under the E.R. statute are consistent with regulation, written policy, so on and so forth, and it gets to or is not consistent with applicable provisions of the subchapter or is otherwise in violation of law. So you don't even think we can say you win on the merits because we can't even get there on your view. We have to send it to D.C. to see if they're going to say that. Well, no, we would say that matter of, again, I don't want to go into matter of MS. Matter of MS is very important for our case, and so the court should consider. But you definitely think that goes to D.C. You don't think we have jurisdiction to talk about that either. All we're saying is this court is competent to consider this question of what the statute is actually saying, and at the very least, the court can find that the statute doesn't provide for bond hearings within seven days. Wait, wait, wait. You don't think we have jurisdiction to do that? I think you don't think we have jurisdiction to do that. We're talking about the district court here. We're here at Interim Auditorial Appeal trying to figure out whether the district court erred by a second review of that case. Yeah, and don't you think we should say vacate everything, send the whole thing to D.C.? I thought that was your position. Our position would be basically to remand with instructions to dismiss for these merits-based reasons that we're advancing here. No, but how do we have jurisdiction to say anything should happen on a merits-based reason? I thought your whole thing was pretty similar to what the court in Jennings did. In that case, it's simply saying, look, when it comes to this idea of what's implausible or not, there's simply no way to read that statute. And so the court's... I'm so confused. I thought you said any kind of case that's challenging any kind of due process issue or anything challenging this whole implementation or anything has to go to D.C. It can't be in this court. So if that's true... Or it can't be done at all. We're going to lose. We have to send it to D.C. I thought that was your position. The position that we've advanced is that the case should be remanded. Now, in terms of... What is the jurisdictional basis? How should anything happen in the circuit on your whole first half of your brief if there's no jurisdiction? Well, again, because we are stressing 1252A2A, at the very least we can say under 1252A2A the district court never had jurisdiction in the first place. And so to that extent, that should be vacated. Okay. Then maybe that's the same thing I'm saying. You think there should be nothing happening in this circuit that should go to D.C.? It should be transferred and nothing is said. All that should be happening is a transfer to D.C.? We're saying at the very least the Western District of Washington should have never heard this case in the first place and plaintiffs want to go ahead and re-up their claims before the D.C. court. We would deal with that then. But you said before... You really are being very confusing. You basically affirmed that matter of MS is substantively not a due process violation. That's what you said. I mean, we started with the merits a little backwards, but I think we then got to the jurisdiction and I thought your argument was... Don't we transfer when there's a case that could have jurisdiction somewhere else but not in us, we transfer it. And I think that's what you're saying we should do, but now I'm really confused. I would say that the two issues are dispositive on their own. But we can never talk about merits if we don't have jurisdiction. That's the thing. So if this panel disagrees with us on jurisdiction and finds that it can go to the merits, we're saying there's a slew of arguments that we can make that would favor the government. Okay, I understand that. Let's go back to the start with the jurisdiction. If you win on jurisdiction, then we tell the district court to transfer the case to D.C. And the court doesn't have to foray into the merits at all in that case and that's the purpose of the last question. You in your brief spend a lot of time on the seven-day thing. That's out of the case at this point and I don't understand. Do you agree with that? No, that's still how their case, their claim and their class is defined. But we have a certified question on interlocutory appeal and it has nothing to do with how long the time period is. It's just if there are any rights. But we're talking about procedural rights that are due to this particular class as people who haven't had it within seven days. But that doesn't mean they get to have it in seven days, 20 days or five years. It's just class defined as people who haven't had it within seven days. All we're saying is to the extent that claims have tethered their claims to that seven-day window, hold them to it. Except that that's not where we are in this case. We're on interlocutory appeal and a narrower question which has nothing to do with the amount of time. It's a broader question. If the court finds that there's no bond hearings at all. Well, that's true. If there is some kind of right to due process with regard to this detention, then we'll go back and the district court will decide how much time and how it works and all that. Or maybe it wouldn't. So I don't understand it. Seven days just seems out of the case at this very unusual posture. I see what you mean, Your Honor. So if the court doesn't side with us on this, is there a right to bond hearings at all question, then perhaps the district court would have to consider the claims with respect to that particular very strict time period of seven days. No, we don't. I'm saying the district court. So you're just wrong about that. Your brief which just keeps going on and on about that is just wrong. For now. I wouldn't say we were wrong. We included that as an ancillary argument, but our main argument is that there is no right to bond hearings. Point blank. Okay. We'll still give you five minutes for rebuttals if you're from the other side. Meanwhile, we're going to all stop you. That's what I'm going to do. May it please the court. Matt Adams with Northwest Immigrant Rights Project on behalf of plaintiffs and class members. In asserting the district court erred by denying their motion to dismiss, as we discussed, plaintiffs rely primarily on the jurisdiction limiting provisions of 1252 and the Supreme Court's decision in Thursigium. But with respect to both arguments, defendants err by attempting to expand those legal barriers to encompass collateral challenges to detention. I think the one thing that we agree with defendants on is that Jennings is directly instructive as to what should occur in this case. Because after all, in Jennings, the Supreme Court was looking at a summary or a subclass of individuals in expedited removal proceedings. And the court there did not say, oh, we have no jurisdiction to review this class that came out of California. Instead, the court reached the merits on that issue. But don't we have this drive-by jurisdiction doctrine that says when you don't talk about jurisdiction, we don't view it as a jurisdictional holding? I think that is true. But we also have very clear case law saying that courts have an independent obligation to determine their jurisdiction. But that's always been true alongside the drive-by doctrine. And it seems like, I think, Jennings uses a drive-by case on this issue because no one talked about the argument they're making now. But Jennings carefully reviewed neighboring provisions of 1252. For example, it was focused on 1252b9 and had similar language that it was analyzing. It was talking about cases that arise from these matters. Instead, when looking at these capacious phrases, it shouldn't be read in a way that's not sensible. In any event, I mean, it may be some indication, but it's not dispositive, so it would be helpful to me if you walk through the statutes, which I find quite confusing. Absolutely. First of all, do you think that 2a sub 2 applies? No. So that provision is talking about whether to invoke expedite removal in the first place or not. We're not challenging that our class members should have been subject to expedite removal. I don't know which cases they are right now, but I know there are several other cases dealing with jurisdictional provisions under the Immigration Acts, which regard invoking the provisions as something different from what happens under them. So the harder question is whether this is under a sub 4, Romanet 4, and also what is the interaction, Judge Friedland was asking about that, between a and e in terms, is e an exception that applies only if a first applies, or how does that work? So with respect to Romanet 4, the statute talks about procedures and policies adopted by the Attorney General to implement those provisions. And I think that's read as a catch-all in talking about what it's already been discussing in that same section. And so it's not just individual determinations or individual cases where it's invoking it, but it's also the overarching policies. Now the question presented is, do those policies encompass detention as well? Does it encompass anything that's related to the expedited removal process? Well, the problem, of course, is that the provision with regard to detention is in 1225b1. Yes. That's where it is located. That's correct. But again, I would go back to the language in Jennings. When it was looking at... Why aren't you implementing the provisions of 1225b1 if you have a policy or procedure adopted by the Attorney General with regard to the detention subsection of 1225b1? Because 1252, the text, the overall section, and then in particular 1252a2a and 1252e are focused on the removal orders and the issues underpinning those removal orders. But as the Supreme Court said in Jennings, that the class members... But why are we in 1252a now instead of in... Go ahead. I'm sorry. So again, admitting that Jennings is focused on b9, but there the analysis is applicable. It says, class members were, quote, not asking for review of an order of removal, not challenging the decision to detain them in the first place or seek removal, and not even challenging any part of the process by which their removability will be determined, end quote. And that is, again, consistent with the overall text of the statute, which is focused on removal orders, in this case expedited removal orders, and the corresponding proceedings. Detention is a collateral issue to that, and that was the point of the Supreme Court's decision in Jennings. And in Jennings, in fact, it relied on its analysis out of the Arab-American anti-discrimination case. That is the case I was talking about before. Yeah, reviewing yet another neighboring provision, 1252g. And again, finding that when reviewing those cases, they should not be read expansively. And all of that squares with this case as well. Right. So where are you getting the idea that it's... that detention isn't part of the policy of expedited removal? So let me go then to the... in answering that, to 1252e, because that was one of the earlier questions. What about that provision, and doesn't it provide a habeas mechanism? But importantly, that habeas mechanism does not allow for any challenge to detention. It enumerates what may be challenged. You can challenge whether a person is a citizen, or so they shouldn't have been subject to it in the first place. You can challenge whether an expedited order of removal was issued. And the last thing you can challenge is whether that person is a lawful permanent... I'm sorry, but what about 3ai? Whether such section or any regulation issued to implement such section is constitutional. I would have thought that is what this case is. I think you could expansively read this, the statutory language, to encompass any related proceeding, including detention, but that's where Jennings provides applicable guidance saying that no, detention falls outside of that. And I think... Wait, wait, where does Jennings say that detention falls outside of it? Again, in the context of 1252b9, it's not focused on this, but in looking at 1252 in general, it's focused on the removal orders and the underlying proceedings. Is detention a part of the proceeding, or is that simply a byproduct that's mandated by... But Jennings doesn't talk about that, does it? In Jennings, the court said, again, that they had authority to review the challenge because they were not even challenging any part of the process by which their removability will be determined. But instead, they were focusing on the challenge... I see, but that's because that's the jurisdictional argument that was made. I guess that's my point. I don't think anyone talked about this jurisdictional argument. That is true. It was not addressed specifically in that decision, but it also seems strange that the court in Jennings would have simply overlooked this when, on its own, the court raised yet another provision, 1252f1. Well, it's just so weird because everyone has been... I don't know why that happened, but no one talked about it on any side or anyone. I don't know what happened here. I mean, now there's this argument that no one talked about. Whether 1252... We believe that 1252a2a and 1252e3 should be cabined to the removal orders and the corresponding proceedings to issue those removal orders and that, per the analysis consistent with the analysis in Jennings, that a challenge to detention is separate and apart from that. And, in fact, the government... So, okay. If we... So, if we read it differently and think that actually this statute, even though no one's ever talked about it forever, is saying it has to be in D.C., what's the problem? I mean, why not just bring your case in D.C.? Why do you need it to be here? One, because we've already developed it, but two, as a practical matter, like, when this case was filed, one of the original claims was it challenged the punitive separation of mothers from their children. Three of our named plaintiffs had been separated from their children at the border and, like hundreds of others, were then flown thousands of miles away from them. Had no idea where their children were. This was another tool that the government used in the expedited removal process. And consistent with the government's argument... But, sorry, I mean, that's terrible, but why couldn't that have been challenged in D.C.? I'm not saying that it could not be challenged, but I'm saying that there's no reason why it would be required to be challenged in D.C. And, of course, you had the Mizell litigation, again, out of California, that successfully resolved that claim, and so it was withdrawn. But the point is, even though that matter or that claim of punitive constitutional violation is in the context of the expedited removal process, that doesn't mean it falls under the confines of 1252A2A or 1252E3, because those are procedures to remove someone. Do you understand E3? Is E3 just an exception to A2A, so that A2A has to first apply? No. In other words, no? No. I understand E3 as providing a limited habeas mechanism. When there would otherwise be no jurisdiction, and it's not habeas. Well, I'm sorry, it's E2 that provides the limited habeas mechanism. Yeah, no, I'm not talking about that. I'm talking about E3. What I'm asking is whether E3 is just the exceptions to A2, so first A2 has to apply. Yes. I think A2... All right, so then what we have to worry about is whether A2 applies, and if the... And I would tend to agree with you that two doesn't apply, so the question is four, or I'm going to have four. And so what about what we were discussing before, which is that there is no relevant policy and procedure adopted by the Attorney General to implement the B1, because it's a matter of statute, and Jennings resolved the statutory question. And I think that was clearly one of the bases for the district court's finding, that there wasn't a policy, per se, that was being challenged. But I think, in addition, what... Which may also be why Jennings did what it did, because it was going straight at the statute. I mean, an explanation for what Jennings did is that it was going straight at the statutory interpretation, and not at any policy and procedure adopted by the Attorney General, so there was no part of A2A that applies. And then one could say that what E3 then does doesn't matter, because E3 only applies if A2 applies first. I think that's correct. E3 is providing for, as it stated, or rather as it states, challenges to the validity of the system. It's not focused on individual cases, and it provides a mechanism. But again, when we're talking about the validity of the system, we think that that must be read in the context of the text of the statute. But why aren't you making it more complicated than you have to? Rather than simply saying, there's nothing in A that precludes this. There's nothing in A... I have to get my numbers right. ...in A2A that precludes this. And that's certainly our primary argument. Well, you never made the argument. Well, we did assert that 1252A2A is inapplicable, that it doesn't cover... Right, because you said it didn't cover it, although for a different reason. But you did say it didn't cover it. And so then, do we get to E3 at all? I don't think so. But to the extent that E3 is at play, like 1252A2A, it should be limited to challenges to the system providing for... Well, but then the language gets broad. Whether such section or any regulation issued is constitutional. So it doesn't depend on there being a regulation or an implementation. It can just be the statute itself. And it does appear that you're going at the statute itself. There are other circumstances in which that would come under A3, under A2A, but not this one. So I don't know why we're looking at E3, is what I'm saying. Well, I would certainly agree that we don't need to go there. But if we do, I think it's important that it be focused within, consistent with the text of the overall section, 1252, focusing on challenges to removal orders and the corresponding proceedings. Do you want to touch the merits? I'm sorry? Wait, sorry, can I ask, before we do, I just have a follow-up question about this. Is your case just a challenge to matter of MS, or does this case currently include a challenge to the statute as a whole? Not as a whole, but the statute. As interpreted by Jennings, we are challenging the statute as a whole, saying it's unconstitutional. So when I read your complaint, it's all about matter of MS. It says this statutory provision that was interpreted in Jennings is unconstitutional. But are you saying we should construe the complaint, we should construe the case at this point as having that? Yes. Our understanding of Jennings, or I'm sorry, of matter of MS, is it's implementing Jennings. Prior to that, the agency recognized a right to bond hearing, and then subsequent to Jennings, implemented their understanding of the holding, which we agree that Jennings says that those individuals under the statute have no right to a bond hearing. And so now the constitutional question is before the court of whether that statute, as interpreted by Jennings, is constitutional with respect to their class. But you amended your complaint, and it just is a challenge to matter of MS. So can we ignore that right now, and it doesn't matter right now? This is now about the statute? Yes. If anything, I think that's inarticulate insofar as it doesn't say, and MS, of course, corresponds to what the Supreme Court did in Jennings-Rodriguez to declare in the definitive ruling that that statute precludes any opportunity for a bond hearing. And are you... Okay, I find this really confusing because I would have thought maybe it's both at this point. Are you saying you're not even challenging matter of MS? Well, we are a challenging matter of MS to the extent that it's executing the statutory interpretation handed down in Jennings. So if I... We all might have different views of how these jurisdictional provisions work, but just one reading might be that a challenge to matter of MS is a matter of implementation that needs to go to D.C., but a challenge to the statute is somehow not within this problem. So we could have a situation where the part of your case that would be the challenge to the statute could maybe be brought here, but the part that's about matter of MS could have to go to D.C. And, again, this goes back to the guidance in Jennings. How broadly should these jurisdictional limiting provisions be read? And it followed countless cases. You can go back to DeMora versus Kim. Well, I think that one is a much simpler answer, which is matter of MS doesn't matter if the statute is unconstitutional and it's invalid. Yeah, our perspective is matter of MS is shorthand for Jennings' holding that the statute precludes release. Can I ask a practical question? What happened to the original Rodriguez case? That was the one that went back to decide the constitutional question. You seem to be now a substitute. You're kind of a stand-in for the remand in Jennings. Sure. So, first, that continues. They're in settlement negotiations in the Southern District of California. But I would want to make clear that we are not a stand-in and that our class is distinct from that because in our class, every single one of our class members, by definition, has already gone through a credible fear screening and been found to have a bona fide claim. But that's true of some of the people in Rodriguez. Some individuals, inevitably, are now also class members. There's a subgroup of those people because that's what Jennings decided, so it must have been. In Rodriguez, there's another distinction. The class there was defined only by those individuals who had never affected an entry. They were apprehended at a port of entry, and so all conceded that they were subject to mandatory detention and argued that at a six-month timeline, that should no longer apply. So, in our case, these individuals have all affected an entry, and as this court noted... All right, so now we can talk about the merits and tell us why they've affected an entry and whether the government is right about the ritual thorachenium. So, it's the first time I've... I think I've heard the government articulate that a due process right are tied to an admission as opposed to entry. I don't think the case law supports it. The case law... Am I right that the case law basically says admission and entry are different things and entry means you're in the country? That's correct, and as you cited from Zibidus, it's not tethered to lawful status, it's not tethered to lawful admission, it's whether someone's affected an entry. Now, there's a legal fiction that some people have not affected an entry because they were paroled in and were provided deferred... But that's a separate matter. So, any individual who's affected an entry is entitled to due process, and... I'm sorry, just pause there for a second. So, why is this not like the parole people? Like, in terms of whether... I mean, I think the government's argument is this is like the parole people, that neither the parole people nor your clients have affected an entry. Why is that wrong? There's two points there. One is that I think in Thursigium, the court was already expanding that legal fiction. They said, well, this person might have made an entry, but it was only 25 yards. We're not going to count that. But what we hear the government saying now is that, well, it might be that this person has been living weeks, months, even up to two years in the United States, and we're not going to accept that that was an entry, despite their residence. But I'm just worried about where is... So, I mean, it seems like Thursigium, in this case, did go down that road a bit. You just said that. So, this is what I'm really, really struggling with, is the court does seem to be doing some entry fiction. So, where's the end of the entry fiction? I agree that Thursigium boards that line, but I still think it's someone who's clearly apprehended upon entering. And, in fact, just last... But does it also matter that Thursigium was about admission? Was the procedures involved, were procedures concerning admission? I actually think that's the more critical point. I mean, I think that, as a backstop, we can also note that it now encompasses people who've been living here for up to two years. But the more critical point is that Thursigium and its progeny is focused on the concept that Congress has the authority to determine who will be admitted into this country, and that, as far as a person who's arriving and seeking admission, whatever procedures Congress gives, that's all they get. It's basically, as Sean is saying, isn't only people who were at the border, but they could be somewhere else. But where else? It could be on Ellis Island or whatever. For our purposes, it doesn't matter now, there are procedures for admission. Exactly. Unlike Thursigium, we're not challenging the expedited removal process. And Thursigium repeatedly emphasized that the individual there, the petitioner, did not seek his release, did not have a claim of unlawful detention, and distinguished that from all these challenges with regards to the arguments, both as far as the suspension of the habeas clause, but also with the due process challenge, in saying that what we're talking about is the right to admission, and Congress has set your rights. You already had your shot, you're seeking another shot at asylum, we're not in a position to second-guess. Okay, so I know you don't want this to be true, but just think for a second. If we think that we're bound by Thursigium to say that the people who are a little bit into the entry fictions only have due process rights to the extent of the statute, and then the statute in Jennings says they have no bond hearing. If that were the world, do you have a problem with your class definition? I'm really puzzled by the idea that you probably have some people in this class, maybe the named plaintiffs or maybe not, because it's kind of vague when they were arrested, some people who would not have a right to a bond hearing when you combine Thursigium and Jennings in that way, but then other people who you would say would be differently positioned, I think. And so what do we do about that? If that were the only salient distinguishing feature of Thursigium, then I would think that we would need to have it remanded for the court to consider what is considered someone who's made an entry versus someone who's not made an entry. I concede that that would be a matter that we need to be... Your ultimate position would be that that isn't the case because of the difference between detention and admission. But our primary position is exactly that, that Thursigium is not addressing other constitutional violation rights. And again, this is exemplified by the family separation. They can't argue that under Thursigium there's no right to challenge a family separation because it was in the process as part and parcel of the expedited removal, just like they wouldn't be able to challenge or say that no court has authority to review that they're being deprived of food. Well, I think they're saying you've challenged the family separation in D.C. That's a separate issue. That's under 1252A2 or rather 1252E3. But if their argument about Thursigium were correct, there would be no authority for the court to even review the family separation challenge, just as there would be no authority... I mean, they might have jurisdiction, but they'd lose because they'd have no due process rights. Exactly. So they're different things. And similarly, that there'd be no substantive right to challenge for detention, even though they concede that individuals can bring habeas cases for prolonged detention. And so some... I mean, and that concession is actually hard to square with both their Thursigium argument and their arguments with respect to 1252 because 1252 doesn't provide a carve-out in any area for a challenge to an alleged claim of unlawful detention. So their concession that individuals can file a habeas petition to challenge unlawful detention undermines both their arguments... I think... I mean, he can have rebuttal, but I thought what he said was you can challenge that you're the wrong person. He said something about prolonged... I thought it was prolonged process, not detention. Maybe I misheard. In their brief, it focuses on detention, and that's one of the ways they try to distinguish Jennings and say this is not like Jennings because we're not seeking to challenge prolonged detention. But in effect, it's squarely on point with Jennings because what our claim now is that at a certain stage of this process, they should have the opportunity to challenge their detention as being no longer lawfully tethered to its permissible purpose. And... All right, so wait a minute. So now, this is going on and on, but what we haven't gotten to is the merits of the merits, which is why is this a violation of due process? And that's a problem. If everything else you're saying is right, you still have to demonstrate that there is a due process violation.  And this is where we get to both century... over a century and a half of Supreme Court precedent talking about the right to liberty and the... especially in the civil context that it be tethered... any deprivation of liberty be carefully tethered to a permissible purpose. And the Supreme Court's decision to divide us discussing this, I know that the government... Well, the problem here is D'Amour. So what are you doing with D'Amour? So let's focus on D'Amour. D'Amour was a challenge to the constitutionality of a statutory provision requiring detention. And the court upheld that. But in doing so, the court relied both on the fact that it was targeted, and the court used the word narrowly, to a group that were found to be a categorical risk and the fact that Congress had created a record justifying that categorical bond risk determination. So I don't know, this might be another problem with your class, but as I understand it, any members of the... the group who was being sent over for asylum hearings who would fit within the criminal class of... what is it? Is it 1225C? Wouldn't get the hearings. So 1226...  Yeah. So that doesn't kick in here. Why not? Because there's a separate detention provision at issue, which is 1225. But... I'm confused. Why... The statute that was actually an issue in D'Amour... Was 1226C. Okay. Why wouldn't that kick in here? If these people fit the criteria. Because here the basis for their detention is not 1226, but rather 1225. Well, I know, but couldn't the... DHS say, well you, you are not... You're under 1226C anyway. No matter who... Even if you're in the group that would be mandatorily detained as... Under 12... Okay, those numbers confuse. But under the... The expedited removal, that's... You're also in the group that would be detained as criminal aliens and we're going to detain you as that. My understanding... You probably want to say yes to that question. Because... Otherwise, you're running into D'Amour. Certainly, any person who has other disqualifying, whether it's criminal record or flight record, that can... That can be taken into account in denying them bond.  Why wouldn't they be directly under 1226C? Because 1226, according to Jennings versus Rodriguez, is inapplicable to our class. Since our class start out in 1225 detention, they aren't transferred then to 1226 detention. But still, I think the salient point... But they could be. I mean, why couldn't they just... Well, anyway, I think that's... It seems to me that if people meet the criteria for 1226C, they could be covered by 1226C. If the court were ultimately defined that at a certain stage an individual is transferred from 1225 to 1226 and therefore entitled to a bond, they would then be disqualified if they had an enumerated criminal conviction as laid out in 1226C. But I think the bottom line is that the question before the district court in the first place is, are they entitled at any stage? Do they have a claim at any stage for a bond hearing? And what the Supreme Court relied on in DeMoor, one of the factors that it relied on was how, again, the fact that this was already defined by Congress as having a categorical risk because of the enumerated convictions, but also the brevity of the proceedings and the court pointed to the fact that in 85% of those cases the median time period was 30 days and it was 47 for average. And again, this is a much greater period of time because most of these individuals Did the district court, in terms of what the question before us is, is this issue within it? This issue is before and this is where,  and it shows that it's premature for a motion to dismiss. As plaintiffs have not yet had an opportunity to engage in discovery to present a complete record as to the time period it takes just to go through the credible fair screenings, the time period it takes to then be transferred to a court, often transferred across the country to an interior detention center, and then the time period taken to conduct the removal proceedings. All of these are salient facts that the court relied on in Demore v. Kim that demonstrate why it's premature at this stage to grant a motion to dismiss because all of these are points that were relied on by the government in rejecting the challenge or rather in successfully fighting off the challenge that was before Demore v. Kim. Similarly, the court, the government argues that the parole process is, and I'm going to quote them here, the availability of parole is an essential component of the constitutional inquiry, end quote. This is, again, something where plaintiffs have not had the opportunity to develop the record to demonstrate all the flaws in the parole process. Now, we can point out some of the obvious flaws. I'm not sure. I'm reading the question that was certified. It says, defendants asked the court to certify the questions of whether the court has subject matter jurisdiction over plaintiff's claims and plaintiffs may pursue constitutional due process claims regarding bond hearings. Does that include the question of whether the bond hearings were,  a constitutional violation? I think to the extent defendants are arguing that it's already resolved matter, that there's no basis because of Thursey and because of  to even bring a claim. Well, I understand what you're saying about to more. To more seems, as I said before, like the merits merits and not as within the question of whether they may pursue the constitutional due process claim. So I would agree with that. And I think it's just another example again of why it would be premature at this stage to grant a motion to dismiss based on subject matter jurisdiction of finding that as a matter of law. But we could also just say, as far as we're concerned, we're not even addressing what processes do in any sense because that's not the question before us. Can I go back to your, I think we got derailed by whether matter of MS matters, maybe in the answer to your question, this question I was trying to ask. If I were to think that the matter of MS challenge that's the focus of your complaint needed to go to DC, but now you're saying actually our case also has this other thing, a direct constitutional challenge to the statute, if I thought that could stay here, what should I do? I think it should stay here. The whole case, even the part that should go to DC or should we send half of it to DC or what? I think matter of MS is only shorthand for what the court has already ruled on in Jennings regarding the construction of the statute. And that's what's before the lower court now. And so while we refer to MS in shorthand to that interpretation in Jennings, at issue before the court is a constitutional challenge to the requirement that our class members be subject to detention without an individualized custody hearing until the conclusion of the removal proceedings. And so while there could And should that question be answered assuming that your named class members are typical of the class and they were arrested right away because it seems like that's how they were described or should we interpret that question as including people up to two years? It should be including people up to two years. The government in their brief asserted that there's no due process concerns because it doesn't address people arrested on the interior, not directly from their brief. And of course that's not the  The fact that the expedited removal statute has been expanded to its statutory limit undermines the right to challenge unconstitutional violations of their liberty or other types of unconstitutional conduct. Okay. What if I disagree with you about that? And I think that the people arrested within the terms of jurisdiction       are going to lose on the merit. What do I do now? Because I think maybe your named class members lose as I read the description of them. But maybe not? If you disagree that there's not a distinction between the challenge to detention and the challenge to admissions and entry, then I think it should be more   government has not moved to redefine the  They can do that.  That's right. The only reason I think this comes up now is because of the government's reliance on Thursidium. If the court rules that we are incorrect and that  should be broad and encompass any constitutional challenge, not just those related to entry or admissions, then I think it goes back to the district court to see if there's a claim that  that. There are members of the class who are in 25 yards from the board. Absolutely. You might not have any named people who are. Right. That is correct. Although under this circuit case law, I think once we have a certified class, if the class is not modified, just as we have class named plaintiffs who have already gone through the process, that doesn't require the district court to make findings regarding when does that entry occur and who                   constitutes the class or who is in a position to push forward with that challenge. Am I right in understanding that it currently seems like the named plaintiffs in this case are pretty similar to  residents? I think that's not universally true, but I'm thinking of Baltasar. Sorry, who? Baltasar. What are his facts? So he was not one of the  who was detained in the family separation, but later was arrested after he defected an entry. But how quickly and where? I don't have that off the top of my  And I don't think we have anything that tells us it's different, right? Right. And so we'd have to go back and look at those individually. Okay. I think we need to hear the rebuttal and then somehow we're going to have to talk to the lawyers for the next case. We're going to have to talk about scheduling after the rebuttal. I actually have two minutes, so I'll move through quickly. So just a few clarifying points. I could have been more clear about the hierarchy of    arguments we laid out. If matter of interest is a policy, we win on jurisdiction. If it's not a policy, it's more a challenge to the  itself. Jennings said that detention falls outside the scope of the statute. Jennings originated as a Hades suit. Detention was bound up in that case. Another clarifying point. Of course it was about detention, but so what? Detention was a factor in that case, but then still the Supreme Court came out and rendered a broad hearing  does go to whether or not bond hearings should be allowed. That's all we're saying. Whether detention should be allowed? Whether bond hearings. Whether those are permissible or not. We're saying that particular holding about bond hearings. All we're saying is that the fact of  in that case didn't alter the ultimate holding in Jennings. That's all we're saying. Another point is, my friend said,  to weigh what's in the context of the ER process is not the same as what falls within 1225B1. We would push back on that vigorously. 1225B1 is the governing statute for the ER process. If anything is within 1225B1, you are talking about the ER process. You can't get around that. I have a question I forgot to ask. Can someone at any point say I don't want to be detained, I want to go back to my country? It seems like your argument is people who come and try to do this expedited process, it's their own fault. They want to apply for asylum and that requires detention. People who now are within the two years, that wasn't the deal before. Can they get out and say send me home or not? Are they stuck? I don't have the answer to that. They could do that. I would like to hear that the government is going to let them out of detention. I'm not sure you said that. If they say yes, I crossed illegally, I was never admitted, but I don't want an ER order placed upon me. I just want to  Even though you found they have a credible fear. If they have a credible fear, they want to go forward with the process. I don't want to be in here for who knows how long. That's the whole case. Based on that fact, I shouldn't be asking   For a year ago, someone came seeking asylum and thought they weren't going to be detained. Now you're saying no, no, you're still in expedited removal. What if they say actually that detention is so much worse than I thought I'd rather just go back to wherever I fear? Are you going to let them out? In terms of pure mechanics of getting back, let's say I'm in Iowa, I'll make my way to the border. I don't think that would be allowed. I understand. If they're in detention because they applied for asylum, if they withdraw their  their expedited removal goes into effect and they're expeditedly removed and you remove them. But the government still has an interest in ensuring that they are removed pursuant to that order that is in place. They can give assurances they will make their way to the border but there's no way to monitor that. You can remove them. You have to remove them. They can be removed in that instance but in terms of voluntarily departing. There won't be a problem in that instance. What I'm worried about is it seems like your argument is that we're allowed to detain them because they're  asylum. What I'm asking is if someone decides to stop seeking asylum because our detention is so bad, what happens? I do think if they're no longer seeking review of their asylum claim, it would seem to me that they would be removed much more quickly because they're not choosing to pursue that claim. So the expedited removal order is now in effect, right? And there was an expedited removal order. Exactly. It is in effect and it would be enforced and would be removed if there's no longer that question of, well, do you still want to pursue your asylum claim? Is there a process for getting out of detention in that situation? I think the process would be with saying just execute the ER order and remove me out of this country. That would be the process. Just one more  My friend made that. There's no policy here. He used the word policy carrying out a statute. That's still a policy. It says procedures and policies. At the very least, mandatory detention, that could be considered a procedure. We're not saying that our case rises and falls on  the   a lot more compassionate than 1252G. It doesn't say arising from. It says relating to. I think that's purposeful. 1252A has no jurisdiction to review policies and  It doesn't say related to. This is sub 4. I'm reading sub 4. Procedures and I'm sorry, your  It's one, actually. We didn't address one. We placed focus on two and four. One here says arising from or relating to the implementation or operation of an order of removal. One final point. You need to consider who was that issue. He did affect entry. We're not arguing that. There wasn't entry in that case. It wasn't an entry under law. It wasn't a lawful entry. It doesn't matter if it's a lawful entry. All the cases it relies on and so on. It's been understood for a   people in this country who come in even if they have an unlawful entry have due process rights. When it comes to an unlawful entry, you're still considered to be at the threshold. If you're at the  the entry doesn't count. It doesn't say all unlawful entries have due process rights.  saying any unlawful entry, anybody who comes and makes an entry but does it unlawfully has no due process rights of any kind including with regard to detention beyond the statute. I'm saying in the ER context if you're placed under an expedited removal order. In your case you may have affected an entry because you didn't enter lawfully. In your particular case your due process rights are limited to what 12.5B1 provides. It matters because we're talking about the relevance that there is for this case. You're saying in that case it could be much deeper to the country. If you read the whole thing the language is very broad. I asked you to read me that language and you couldn't because it isn't there. It applies to anybody who makes an illegal entry. The court didn't cabinet rights to rights regarding appellate cases. It's a broad sentence. There are broad sentences like this concerns procedural rights of people at the threshold. What do they mean by that? You're saying at the threshold means anybody we decide to put into expedited removal proceedings even if they're 2,000 miles away from the border. At the threshold on its face is a broad term. It's not such a broad term. Ordinarily somebody at the threshold of your house is not in the bedroom sleeping. At the very least it's a generic term. The Supreme Court has interpreted the words at the threshold to apply to those cases.  Thursidium that case was someone placed under an E.R. order point blank. It didn't fall on the fact he was only 25 yards. It did use that language but counterbalanced that with very broad language about procedural rights, due process rights. Not   a generic
judges: BERZON, FRIEDLAND, MENDOZA